This is a suit, by ordinary process, on a promissory note secured by a chattel mortgage in which plaintiff procured the issuance of a writ of sequestration, under which the mortgaged property was seized. The defendant bonded the sequestered property and later filed an answer in the nature of a general denial, coupled with a reconventional demand in the amount of $1,000. A motion to dissolve the writ of sequestration was later filed on behalf of defendant, which motion was tried by rule, and judgment was rendered setting aside and annulling the writ and reserving the right of defendant to sue for damages in appropriate proceedings. Finally, defendant filed an amended and supplemental answer in which he claimed an additional sum of $1,800 as damages allegedly resulting from the wrongful issuance of the writ and the seizure thereunder. After trial on the merits there was judgment for plaintiff in the amount of $338.72, being the sum claimed in plaintiff's petition, and further judgment in favor of defendant, as plaintiff in reconvention, in the sum of $495.75, together with $100 as damages in the nature of attorney's fees, and $50 as damages for the issuance of the illegal writ of sequestration and the seizure thereunder. A rehearing was granted and there was final judgment of the District Court on rehearing setting aside its original judgment and awarding judgment in favor of plaintiff in the sum of $338.72, and in favor of the defendant, as plaintiff in reconvention, in the sum of $150. From this judgment defendant appeals and the appeal has been answered by plaintiff, which prays for the amendment of the judgment of the lower Court to the extent of disallowing the amount of $150 awarded defendant, plaintiff in reconvention.
Defendant admits the indebtedness of $338.72 to plaintiff, but strenuously urges his right to substantial damages in reconvention both on the merits and as a result of the alleged illegal issuance of the writ of sequestration and the resulting seizure.
Definitely established facts show that on June 26, 1946, defendant, a Negro man who operated a small sawmill business, purchased from Gay's Engine Service of Shreveport an engine particularly described as being one c/w Pully Butane Battery, Climax, 1942, R110 Engine, Unit No. 3273, Engine No. 14293. The consideration was set forth as being $700 cash, which was actually represented by a credit on the turn-in of another engine, and the sum of $1,166.16 payable in twelve monthly installments of $97.18 each, which unpaid balance was evidenced by the promissory note herein sued on, payable to the order of "Myself" and duly signed and endorsed by the defendant, Sam Johnson. The note, dated June 26, 1946, was paraphed to identify the same with an act of chattel mortgage of even date therewith.
Contemporaneously with the sale by Gay's Engine Service to Sam Johnson and the execution of the note and chattel mortgage, the note was endorsed by "Gay's Engine Service, Willie T. Gay, owner", and delivered to the Commercial Securities Company, Inc., plaintiff herein. After making a number of payments on the note, Johnson began to fall behind and, being unable to meet the payment due in April, *Page 375 
1946, it is shown that on April 14th he paid the sum of $6 to the Commercial Securities in consideration of a thirty-day extension for the time of meeting his next payment. On May 5, 1947, Johnson paid a sum of $50 to plaintiff, which amount, however, did not bring his payments into current condition. On June 14, 1947, plaintiff filed this suit, which initiated the procedural development above described.
Defendant's reconventional demand is based on the fact that plaintiff obligated itself, at the time of purchasing the note above described from Gay's Engine Service, to carry insurance on the mortgaged property, and that it failed so to do. On May 5, 1947, the engine was destroyed by fire and the major portion of the reconventional demand is made up of items claimed to be due as the result of damage, costs of repair, etc. The items of damage constituting the $1,800 claimed by defendant as the result of the alleged wrongful issuance of the writ of sequestration and the seizure of the engine in question, include claims for attorney's fees, cost of release bond, loss of profits, cost of transporting the engine, humiliation and mortification, injury to petitioner's reputation, etc.
Stripping this rather complex and unwieldy record to bare essentials, it is plain that only two questions are involved, first, was the issuance of the writ of sequestration, which resulted in the seizure of the mortgaged property, improvidently, wrongfully or illegally issued? and, second, on the merits of the case, has defendant, in his capacity as plaintiff in reconvention, established, to the degree required, the existence of an obligation and the consequent failure on the part of plaintiff to insure the mortgaged property?
Careful study of the record convinces us that both of the questions posed should be answered in the negative.
Unquestionably, plaintiff was the holder and owner, for value, of the promissory note which forms the basis of this suit. The note was secured by a chattel mortgage creating a lien and privilege which inured to the holder of the note. Under these circumstances there can be no doubt as to the right of plaintiff to the issuance of a writ of sequestration and the seizure of the mortgaged property under the specific provisions of paragraph 7 of Article 275 of the Code of Practice, which reads as follows: "The plaintiff may obtain a sequestration in all cases where he has a lien or privilege on property, upon complying with the requisites provided by law."
No serious attempt has been made to combat the rights of plaintiff under this provision. But defendant bases his contentions as to the wrongful issuance of the writ on the ground that defendant purchased, for a consideration, a thirty-day delay for making an installment payment. He contends that this suit, which was filed on June 14, 1947, was premature. Careful examination of the record before us fails to substantiate this claim. The purchase of the delay was effected on April 14, 1947, which would have extended the period for payment, according to the undisputed testimony on this point, for thirty days. While it is true that within the thirty days, to wit, on May 5, 1947, defendant made a payment, it is also true that this payment did not serve to satisfy the total arrears of his installment. We are at a loss to understand how defendant can claim the benefits of an agreement with which he has not complied. As a matter of fact, it appears to us that plaintiff was sufficiently considerate in delaying this action to a degree which gave defendant an additional thirty days within which to liquidate his past due installments.
These being the facts, as we find them, we perceive no merit in defendant's claim with respect to the illegal and wrongful issuance of the writ of sequestration. In our opinion, the writ of sequestration was properly issued and it necessarily follows that defendant is not entitled to damages.
We now proceed to a consideration of the second question above stated. The burden of defendant's claim, as to the obligation of plaintiff to insure the mortgaged property, is based upon a provision incorporated in a so-called "purchaser's statement" which is set forth on the reverse side of a copy of the chattel mortgage. In a computation of the several items making *Page 376 
up the total amount of the unpaid purchase price on defendant's obligation, there is set forth the following item: "Time Price differential (including the cost of insurance) $108.76".
Out of the above representation in the statement which was signed by the defendant, Sam Johnson, he has attempted to construe an obligation on the part of the purchaser of a promissory note.
Regardless of the fact that, unquestionably, negotiations for the purchase of the engine and the mortgage therefor were consummated at the same time, there is a very definite distinction as to the relationships of the parties involved.
The details of the matter are plain. The defendant, Johnson, agreed to purchase the engine from Gay's Engine Service and Gay discounted the note representing the unpaid portion of the purchase price to the Commercial Securities Company, plaintiff herein. The plain fact is that, while defendant executed his note in the sum of $1,166.16, Gay actually received only $1,057.40. The difference, amounting to $108.76, represented the discount. The provision as to insurance is not and cannot be considered an obligation on the part of the purchaser of the note.
Reference to the chattel mortgage itself discloses the following provision: "Vendor, or the holder and owner of said note, may, but shall not be obligated to, insure said property against fire and theft, and collision or either of them in such form and amount and with such insurers as shall be satisfactory to, and to protect, the holder and owner of said note. Mortgagor agrees to pay the premium therefor upon demand and on failure to do so payment of said premium shall be secured by this mortgagee * * *."
There is no showing that the mortgagor paid any premium of insurance, nor is there any evidence of any demand or of the payment of the premium by any other party.
Neither is there any showing in the record before us of any agreement as to insurance between defendant and plaintiff. The attempt was made, through the testimony of defendant himself, to establish such an agreement. But it developed that this effort was predicated upon a telephone conversation between Gay and a representative of plaintiff which was relayed by Gay to the defendant. And, the only testimony to this effect was that of the defendant. The value of defendant's testimony is considerably weakened in consideration of the fact that he proved himself to be an unsatisfactory and unreliable witness in his testimony on other matters. Whatever the credibility, or lack thereof, of defendant, the fact remained that his unsupported statement of an understanding as to insurance, which is stoutly denied by plaintiff's witnesses, falls far short of the required preponderance of the evidence upon which a judgment may be based.
For the reasons assigned, the judgment appealed from is amended to the extent of rejecting all the reconventional demands of defendant, Sam Johnson, against the plaintiff, and, as amended, it is affirmed. All costs of both courts are taxed against defendant-appellant.